## Cumberland Railroad Company v. Gibson-Carr Coal Company.

(Decided February 10, 1916.)

### Appeal from Knox Circuit Court.

Appeal and Error.—The evidence clearly showing that the contract, upon which a recovery was had in this case, was made and that the railroad company was indebted to the coal company in the amount of the judgment, it will be affirmed, as it does not appear that any error prejudicial to the substantial rights of the appellant was committed in the trial court.

BLACK, BLACK & OWENS for appellant.

J. M. ROBINSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The Gibson-Carr Coal Co. owned a body of coal land a few miles distant from the line of railroad owned and operated by the Cumberland Railroad Co., and in 1907 or 1908 the coal company entered into a verbal contract with the railroad company by which it was to build a railroad from its coal fields to connect with the line of road of the Cumberland Company. As a part of the contract the railroad company agreed that it would pay to the coal company the cost of the rails and fastenings used in the construction of the road and would pay this

item of the cost by allowing the coal company two dollars on each car load of coal shipped from its mine over the road after the mining road had been put in operation.

About 1911 the road was finished by the coal company, and on October 20, 1911, it wrote to B. C. Millner, general manager for the railroad company, a letter, asking him to mail it a contract showing that the coal company was to purchase the rails and fastenings for the spur track and to be reimbursed for the cost of the same at the rate of two dollars on each carload of coal shipped from its mine, the refund to begin as soon as shipments of coal commenced. It further advised him that it was about to make a sale of its mine property.

On October 26th, 1911, Millner, acting for the railroad company, in answer to this letter, said: "It is understood that you are to do the grading, furnish ties, rails and fastenings and lay the track all at your own expense. As soon as shipments begin we will refund to you the cost of rails and fastenings at the rate of two dollars per loaded car."

On July 9, 1912, the coal company sent to the railroad company an account showing the cost of the rails and fastenings, which amounted to $1,773.06. On July 24, 1912, the railroad company answered this letter, acknowledging the receipt of the bill of cost of the rails and fastenings, and asking the coal company to let it know if it should make the contract for the operation of the road—involving of course the payment of this bill—in the name of the Dean-Jellico Coal Co., or in the name of the Gibson-Carr Coal Co. The reason why the railroad company inquired whether the contract should be made with the Dean-Jellico Coal Co. or the Gibson-Carr Coal Co. was that about this time the Gibson-Carr Coal Co. had sold its mining property to the Dean-Jellico Coal Co.

On July 25, 1912, in answer to the letter of the railroad company, the Gibson-Carr Coal Co. wrote: "Relative to contract for rails and fastenings used in tracks, we beg to advise that we desire the contract made in favor of the Gibson-Carr Coal Co., as we paid for the material and it was the agreement with the Dean-Jellico Coal Co. that we were to have the rebate on the rails, etc. So please make this contract in favor of the Gibson-Carr Coal Co." ...·

In answer to this letter the railroad company, on July 26, 1912, wrote: "We have already drawn these contracts in favor of the Dean-Jellico Coal Co. and would prefer to have them go that way if it it satisfactory to you. Let us hear from you about this."

In answer to this the coal company, on July 30, 1912, wrote the railroad company: "It is not satisfactory to us to have you make the contract in favor of the Dean-Jellico Coal Co., as we put up the money to pay for the steel and want the money to come direct to us. We would be glad to have you make the contract in our favor so that we will have some assurance of getting our money back on this material. Trusting you will change the contract and make it in our favor, we are." * * *

But, notwithstanding these directions, the railroad company, in December, 1912, entered into a contract with the Dean-Jellico Coal Co., which was then the owner of the mining property, for the operation of the road and mine, and in this contract it agreed to refund to the Dean-Jellico Coal Co. the cost of the rails and fastenings, the refund to be based on the tonnage of coal shipped over the road and not to begin until two years after the contract was entered into.

It is further clearly shown that in the contract made between the Gibson-Carr Coal Co. and the Dean-Jellico Coal Co. the former reserved the right to collect from the railroad company the cost of the rails and fastenings according to the contract it had made with the railroad company.

The railroad company refusing to pay for these rails and fastenings, this suit was brought by the Gibson-Carr Coal Co., and there was a judgment in its favor for $1,773.06.

In the suit it brought against the railroad company the coal company made the Dean-Jellico Coal Co. a party defendant, setting up its contract with the Dean-Jellico Coal Co., and asking that it answer and assert any claim that it might have to this refund. The Dean-Jellico Coal Co. filed its answer, in which it said, in substance, that although the railroad company made a contract with it in regard to the refund on the coal shipped to pay for the cost of the rails and fastenings, it had no claim or right to any part of the refund, as it was understood and agreed at the time of its purchase from the Gibson-Carr Coal Co. that this company was to have

all of the refund on this account. It further said that the railroad company, by threats of extortion and discrimination, forced it to accept the contract prepared by the railroad company, although it had at no time any right to any part of the refund. It prayed to be dismissed with its costs, and that whatever money was due as a refund for the cost of the rails and fastenings should be adjudged to belong to the Gibson-Carr Coal Co. The averments of this answer were not controverted by the railroad company, and indeed there is little or no issue of fact in the case.

On this appeal the contention of the railroad company is that there should have been a directed verdict in its behalf on the ground that there was no contract between it and the Gibson-Carr Coal Co. But there was a contract clear and specific, as is shown by the letters we have noticed. These letters further show that the railroad company was fully advised that in its trade with the Dean-Jellico Coal Co. the Gibson-Carr Coal Co. reserved the right to be paid according to its contract the cost of the rails and fastenings, and it protested against the railroad company entering into any contract respecting the same with the Dean-Jellico Coal Co.

It is further quite apparent that the railroad company desired to avoid this contract with the Gibson-Carr Coal Co. by substituting in its place a more favorable contract with the Dean-Jellico Co., and that, over the protest of the Dean-Jellico Coal Co., it forced it to accept the contract which it did not desire to enter into.

We find no merit whatever in the effort of the railroad company to evade the contract made with the Gibson-Carr Coal Co., and it is conclusively shown that the Dean-Jellico Coal Co. shipped a sufficient number of cars of coal over the road to amount, under the contract with the Gibson-Carr Coal Co., to the sum due it on account of its payment for the rails and fastenings. It is further clearly shown that in the contract with the Dean-Jellico Coal Co. the right to recover from the railroad company the cost of these rails and fastenings was reserved by the Gibson-Carr Coal Co. The Gibson-Carr Coal Co. had the right to sell its mine to the Dean-Jellico Coal Co. and to recover from the railroad company under its contract whenever the Dean-Jellico Coal Co. had shipped the required number of cars of coal.

There is some attempt to show that the Gibson-Carr Coal Co. had knowledge of and consented to the contract made by the railroad company with the Dean-Jellico Coal Co., but this evidence is neither sufficient nor satisfactory to defeat the claim of the Gibson-Carr Coal Co. or to establish that it consented that the railroad company and the Dean-Jellico Coal Co. might enter into the contract made between them at the instance of the railroad company.

Some other minor errors are assigned, but they do not affect the substantial rights of the railroad company and need not be noticed.

We think the claim of the Gibson-Carr Coal Co. was clearly meritorious, and the judgment in its favor is affirmed.